UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                    Case No. 21-cr-0131-bhl-3

JONTE MARSHALL,

          Defendant.

## ORDER ADOPTING JUDGE JOSEPH'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

      On November 9, 2022, law enforcement officers executed a search warrant on Defendant Jonte Marshall's condominium located at 11946 West Mill Road, #25, in Milwaukee, Wisconsin (the Mill Road Condo). (ECF No. 156 at 1–2.) Officers recovered over 90 kilograms of controlled substances, including 19 kilograms of fentanyl and more than 70 kilograms of cocaine, along with approximately $421,000 in United States currency concealed in a hidden compartment in an automobile registered to Marshall. (*Id.* at 2.) Marshall has moved to suppress the evidence gathered during the search, claiming the warrant authorizing it was not supported by probable cause. (ECF No. 142.) In a September 19, 2023 Report and Recommendation, Magistrate Judge Nancy Joseph analyzed the parties' arguments and concluded that Marshall's motion should be denied. (ECF No. 151.) Marshall has objected to the Report. (ECF No. 154.) Because the record confirms that Judge Joseph correctly concluded that probable cause existed to issue the warrant, the Court will adopt her Report and deny Marshall's suppression motion.

## BACKGROUND

      In October 2022, the government applied for seven search warrants in connection with a narcotics investigation involving Marshall and other co-conspirators. (ECF No. 154-1 ¶8.) The warrants authorized searches of four residential properties, one commercial property, a safe deposit box, and a storage unit. (*Id.*) To support its request for the warrants, the government proffered a lengthy 64-page affidavit from Matthew Cooper, a detective with the Milwaukee Police

Department and a United States Department of Justice Drug Enforcement Administration Task Force Officer. (*Id*. at 8-71.)

Cooper's affidavit detailed a years-long investigation into a suspected drug trafficking operation involving Marshall and his co-conspirators, Shomari Hooper, Lemonda Ward, Oscar Ramirez-Rivera, and Mira Mata-Torres. (*Id*. ¶10.) Cooper explained that the government began investigating Marshall in 2019 based on information from a confidential source (CS-1)[1] who identified Marshall as a large-scale distributor of heroin, cocaine, and marijuana in the Milwaukee area. (*Id*. ¶11.) CS-1 identified Marshall as being the supplier of narcotics to Corey Vance and the person who later directed him to purchase narcotics from Hooper. (*Id*. ¶¶13, 40.) CS-1 began making controlled buys from Vance in April 2019. (*Id*. ¶¶20–21.) But Vance later died of natural causes, after which CS-1 began making controlled buys from Hooper. (*Id*. ¶40.) The switch from Vance to Hooper followed a meeting between CS-1 and Marshall at Vance's funeral, during which Marshall directed CS-1 to start purchasing fentanyl from Hooper. (*Id*.) CS-1 then continued making controlled buys from Hooper through November 2020. (*Id*. ¶¶41–54.) CS-1 also reported that Marshall resided at a duplex located at 1929 and 1931 South 97th Street, West Allis, Wisconsin (referred to in the search warrant as Target Location B and Target Location C, respectively) with Marshall living in the lower unit and storing drugs in the upper unit. (*Id*. ¶11.)

Case agents monitored Marshall's activities through surveillance and various tracking technologies during controlled buys. (*Id*. ¶¶19–54.) Agents suspected Marshall's girlfriend, Lemonda Ward, served as the courier delivering drugs from Marshall to Vance or Hooper for CS-1 to purchase. (*Id*. ¶28.) Agents also identified numerous packages being shipped to Marshall's duplex or another of his residences located on West Mourning Dove Court in Mequon, Wisconsin (Target Location A). (*Id*. ¶¶55-60.) These packages contained products commonly used as cutting agents along with devices commonly used to press powered narcotics into bricks. (*Id*.)

In his affidavit, Cooper explained that he believed Marshall was using the Mill Road Condo (Target Location D) as a "stash house." (*Id*. ¶100.) He indicated that Marshall had purchased the condo on or about July 23, 2020, and case agents believed he paid for the residence entirely in cash. (*Id*. at ¶135.) The closing file, obtained from Knight Barry Title, showed Marshall owed

---

[1] Case agents believed CS-1 to be a reliable person because CS-1 provided information that law enforcement corroborated through independent investigation, provided statements against his own penal interests, and conducted controlled buys of narcotics for law enforcement. (ECF No. 154-1 ¶11 n.2.)

the seller $40,856.80. (*Id.*)  Emails indicated that Marshall paid the seller the entire balance outside of closing, and Marshall's known bank accounts showed no withdrawals made in connection with the purchase.  (*Id.*)  Agents also discovered that the deed was held by an entity named Blackout Investments, LLC, for which Marshall was listed as registered agent.  (*Id.* ¶¶118, 135.)  In a May 2019 loan application, Marshall described Blackout Investments as an "LLC I had originally setup for rental properties prior to 2016.  The LLC is not operation[al] and has been dissolved but I have not closed the business account yet."  (*Id.* ¶119.)  Two years later, in 2021, Marshall submitted a financial statement to Byline Bank as part of a loan application and listed four other rental properties owned by Blackout Investments but omitted the Mill Road Condo.  (*Id.* ¶¶123, 136.)  Agents also learned that the Mill Road Condo had no active utilities account.  (*Id.* ¶145.)

Cooper also relayed information agents had obtained concerning multiple Blackout Investment accounts at BMO Harris Bank and Wells Fargo Bank.  (*Id.* ¶¶120–22.)  Bank records revealed that Marshall was sole authorized signatory for these accounts and had made deposits and withdrawals in and from them.  (*Id.*)  With respect to the BMO account, all deposits were in even dollar cash amounts.  (*Id.* ¶120(b).)  Between January 9 and November 13, 2018, Marshall made deposits ranging from $1,000.00 to $5,020.00 and totaling $40,020.00.  (*Id.* ¶120(c).)  As for the Wells Fargo Bank account, most deposits were also in even dollar amounts of either $3,000.00, $4,000.00, $6,000.00, or $8,000.00, and "conducted in a fashion consistent with structuring of currency transactions to evade the bank's $10,000.00 cash transaction reporting requirement."  (*Id.* ¶122(a).)

Cooper's affidavit identified three times surveillance put Marshall at the Mill Road Condo.  (*Id.* ¶¶100-09).  On August 3, 2022, case agents observed Marshall's white 2021 Cadillac Escalade, bearing Wisconsin license plate AND-5667, parked in the parking lot outside the entrance to the building and Ward's white 2015 Dodge Durango, bearing Wisconsin license plate AMT-3369 parked in the parking lot.  (*Id.* ¶100.)  The agents observed Ward and then Marshall leave the condo.  (*Id.* ¶101.)  The agents continued surveillance of Ward, who entered a parking lot adjacent to a McDonald's and remained in the parking lot for approximately two minutes before driving out.  (*Id.*)  As noted in the affidavit, "Case agents are aware this is a technique frequently used by drug traffickers to determine if they are being followed."  (*Id.*)

On August 4, 2022, case agents observed a white van towing a trailer arrive at Marshall's Mequon residence.  (*Id.* ¶¶102–03.)  The case agents observed Marshall exit the residence, engage

in conversation with the van's driver, and then hand him a thick, white envelope that agents believed contained currency. (*Id.*) Almost one hour after the driver left Marshall's Mequon residence, Marshall drove to the Mill Road Condo, entered the property, and drove away just four minutes later. (*Id.* ¶106.) The affidavit detailed multiple instances, prior to August 4, 2022, of narcotics and/or large sums of money being moved using a trailer. On June 13, 2021, a Kansas Highway Patrol Trooper observed a semi-tractor towing a car carrier trailer and conducted a traffic stop for commercial vehicle inspection. (*Id.* ¶88.) Upon inspecting the vehicles on the car carrier, the Trooper located a white 2013 Nissan Cube that had been shipped from California and was destined for Milwaukee, Wisconsin. (*Id.*) A subsequent search revealed electronically controlled compartments containing 16 kilogram-sized packages of substances that tested positive for fentanyl and 14 packages of a substances that test positive for cocaine. (*Id.*) Case agents believed this fentanyl and cocaine were being transported to Milwaukee for distribution. (*Id.*) On June 29, 2021, case agents interviewed an individual pursuant to a proffer letter who stated he was involved in the shipment of the Nissan Cube from California to Wisconsin. (*Id.* ¶95.) This individual stated the fentanyl and cocaine in the vehicle were to be delivered to "Jon," an African American male, 45-50 years old, who lives in Mequon Wisconsin. (*Id.*) This individual identified a photograph of Marshall as the subject known as "Jon," described the location of Marshall's residence at 8320 West Mourning Dove Court, Mequon, Wisconsin and stated that within the last year he had arranged the delivery of over 100 kilograms of fentanyl from California to Marshall in Wisconsin. (*Id.*) This individual also provided agents with the phone number used by Marshall to coordinate the delivery of the fentanyl and cocaine seized in Kansas. (*Id.* ¶96.) Court-authorized positional information for that phone showed the phone travelled in tandem with the known phone used by Marshall for several days surrounding the expected delivery of the fentanyl and cocaine and helped to further corroborate that Marshall was the intended recipient of the fentanyl and cocaine. (*Id.*)

During an attempt to locate co-defendant Ramirez-Rivera in August 2020, case agents observed a commercial car carrier in a parking lot. (*Id.* ¶81.) The car carrier contained a Jeep Grand Cherokee that had been observed leaving 7836 North Faulkner Road in Milwaukee (Target Location E.) (*Id.* ¶¶80–81.) During the search of the Jeep on August 12, 2020, $508,140 was located in an electronically controlled compartment behind the rear passenger seat. (*Id.* ¶82.) On August 13, 2020, case agents observed a 2005 Ford Expedition registered to Marshall and driven by Ramirez-Rivera being loaded onto a commercial car carrier at Target Location E. (*Id.* ¶85.)

During a subsequent search of the vehicle, $100,020 was located concealed in a driver's side rear quarter panel. (*Id.* ¶86.) Over two days, law enforcement seized over $600,000 in U.S. currency from two vehicles for which Marshall had been involved in coordinating their interstate transport. (*Id.* at ¶¶ 77-87.)

On August 18, 2022, case agents followed Marshall's Escalade to several locations in the Milwaukee area and then to the Mill Road Condo, where agents observed Marshall enter the Condo with a tan bag and later exit without it. (*Id.* ¶109.) After Marshall left the Mill Road Condo, case agents continued surveillance and observed Marshall enter the ramp for Interstate 41 South, suddenly pull to the shoulder on the right and stop. (*Id.* ¶110.) Several case agents drove past Marshall, who then re-entered the ramp and continued south on Interstate 41. (*Id.*) Then, at the exit ramp for West Hampton, Marshall entered an "Exit Only" lane. (*Id.*) Case agents believed Marshall's driving to be "counter-surveillance to determine if [he was] being followed." (*Id.*)

On October 31, 2022, Magistrate Judge Stephen Dries authorized the issuance of federal search warrants for the Mill Road Condo and other properties owned by Marshall. The warrants authorized agents to search for evidence related to violations of 21 U.S.C. §§ 841 and 846. (*Id.* ¶10.) Law enforcement officers executed the search warrant on the Mill Road condo on November 9, 2022, and as previously noted, recovered large quantities of narcotics. Agents also seized an automobile registered to Marshall with approximately $421,000 in United States currency concealed in a hidden compartment. (ECF No. 156 at 2.)

On November 8, 2022, the grand jury returned a superseding indictment charging Marshall with conspiracy to possess with the intent to distribute cocaine and fentanyl between April 1, 2019 and November 8, 2022, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One), attempted possession of a controlled substance, fentanyl, with the intent to deliver, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 and 18 U.S.C. § 2(a) (Count Two); purchasing a residence using proceeds from the alleged drug conspiracy in violation of 18 U.S.C. §§ 1957(a) and 2(a) (Count Three); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 4). (ECF No. 52 at 1–5.) The superseding indictment also charged six other defendants. (*Id.*)

On August 27, 2023, Marshall moved to suppress evidence collected at the Mill Road Condo. (ECF No. 142.) Judge Joseph considered Marshall's arguments, but ultimately concluded probable cause existed for issuance of the warrant and recommended denying the motion to

suppress. (ECF No. 151 at 15.) Marshall filed objections and now asks the Court to reject Judge Joseph's Report and Recommendation. (ECF No. 154.)

## LEGAL STANDARD

A district court judge "makes the ultimate decision to adopt, reject, or modify" a magistrate judge's report and recommendation. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The district court reviews, *de novo*, "those portions of [a Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3). This "[d]e novo review requires the district [court] judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). Unchallenged portions of the report are reviewed only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## ANALYSIS

Marshall's suppression motion comes down to the basic issue of whether the facts proffered in Cooper's affidavit were sufficient to support a finding of probable cause and thus the issuance of a search warrant for the Mill Road Condo. Marshall does not object to the magistrate judge's recitation of the facts, nor does he contend that the warrant contained faulty information. Accordingly, the Court accepts the facts as undisputed. Marshall's attack instead focuses on whether those facts were sufficient to support a finding of probable cause. He argues that the affidavit failed to provide "even the bare minimum [of] evidence" establishing probable cause to believe the Mill Road condo was used as a stash house. (ECF No. 154 at 8.) Because the facts presented are sufficient to establish probable cause, the Court will overrule Marshall's objections, adopt Judge Joseph's Report, and deny the motion to suppress.

### I. The Affidavit Submitted in Support of the Warrant Application Established Probable Cause to Search the Mill Road Condo.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When, as here, an affidavit is the only evidence presented to a judge to support issuance of a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775–76 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003)). "A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it

'sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* at 776 (quoting *Peck*, 317 F.3d at 756). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). That decision is afforded great deference. *See United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Thus, a reviewing court should "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984)). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

To begin, Cooper's affidavit amply described Marshall's involvement in a large and ongoing drug-distribution conspiracy. The affidavit related CS-1's identification of Marshall as a supplier of narcotics who directed CS-1 to purchase fentanyl from co-conspirator Hooper after his prior source, Vance, passed away. CS-1's statements were corroborated by CS-1's controlled buys from both Vance and Hooper, both of whom he connected with Marshall.

The affidavit also connected Marshall to the Mill Road Condo and provided a basis to believe the condo was being used for criminal purposes. As detailed above, Cooper described three short visits by Marshall to the Mill Road Condo. When viewed in context, all three visits were suspicious and, given the evidence of Marshall's drug trafficking involvement, provided a basis to search the condo. Moreover, on top of this evidence, the affidavit also detailed other facts suggesting criminality with respect to the Mill Road Condo, including Marshall's having purchased it with cash and a number of actions Marshall took to conceal the nature of the property, like not listing it on a loan application. Together with other information in the affidavit, these facts

were more than sufficient to support a finding that probable cause existed to search the Mill Road Condo.

Marshall offers attacks on several pieces of this information and insists that each, individually, is insufficient to support a probable cause finding. He attacks the government's reliance on his visits to the condo and argues there are innocent explanations for all three. But probable cause is not determined by looking at individual facts in isolation. The Court must look at the totality of circumstances in context. *United States v. Carswell*, 996 F.3d 785, 793 (7th Cir. 2021). Moreover, Marshall's arguments concerning the individual facts are not persuasive.

For example, with respect to the first time surveillance showed him at the Mill Road Condo, Marshall argues that the mere observation that he and Ward left the property was not unusual and did not depict any illegal behavior. (ECF No. 154 at 10.) He also notes that Judge Joseph did not include the August 3, 2022 surveillance in her probable cause analysis. These arguments misunderstand the probable cause analysis. While agents may not have observed Marshall engaging in specific illegal activity at the condo on August 3, 2022, additional circumstances raised legitimate suspicions. That day, the case agents continued their surveillance of Ward, not Marshall, and observed her utilizing driving techniques frequently used by drug traffickers to determine if they are being followed. This, along with all of the additional facts surrounding Marshall, his drug trafficking activity, and his visits and purchase of the condo, together supported a probable cause finding.

Marshall makes a similar argument concerning the August 4, 2022 surveillance at the Mill Road Condo. (*Id.* at 10–11.) But again, he ignores the complete evidence in the affidavit and the full context of his visit that day. For what it is worth, Marshall is correct that he was not observed transporting anything into the condo on that occasion. But the visit occurred after agents observed him conversing with a van driver at his Mequon residence and then handing him a thick white envelope, which law enforcement officers believed contained currency. While the incident with the van driver occurred in Mequon and not at the Mill Road Condo, agents observed Marshall visit the condo later that same day. Marshall's argument that that agents simply observed an interaction between him and another individual who could have been "a landscaper, a worker, repair person, or a friend" ignores the full context. The affidavit detailed a number of instances where Marshall used a trailer or a car carrier to move narcotics and large sums of cash. In one of those instances, a cooperating witness connected Marshall directly to the 30 kilograms of controlled substances

recovered from the Nissan Cube. Considering all the evidence, the surmise that evidence of criminal activity might be found at the Mill Road Condo was not, as Marshall argues, a "wild uneducated guess." (*Id.* at 11.)

Marshall also downplays the surveillance of his third, August 18, 2022, visit to the Mill Road Condo. (*Id.* at 11–12.) The affidavit describes how case agents observed Marshall enter the Mill Road Condo with a tan bag and later exit the property without the tan bag. Marshall argues that the affidavit did not provide any information concerning the bag's contents, let alone that it contained anything illegal. Marshall acknowledges that surveillance then observed Marshall utilizing counter-surveillance tactics to determine if he was being followed but argues that the affidavit did not allege that Marshall was in possession of narcotics or money or that he was on his way to engage in illegal activity. (*Id.* at 12.) Again, Marshall ignores the context and other evidence presented to the magistrate judge. The fact that Marshall dropped off a tan bag and then engaged in "counter-surveillance tactics" after leaving the Mill Road Condo, which included driving erratically, stopping on ramps, and entering exit ramps, lends credence to the probable involvement of the Mill Road Condo in illegal activity.

Each August 2022 surveillance incident presented legitimate concerns of suspicious activity. Judge Joseph noted that "taken in isolation, [any single incident] would not support probable cause to search the Mill Road property," but probable cause is established when an affidavit establishes facts sufficient to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. (ECF No. 151 at 11 (citing *Peck*, 317 F.3d at 756).) Judge Joseph found that, "looking at the totality of the circumstances—the whole picture—the affidavit alleges sufficient specific facts and circumstances that would permit the issuing judge 'to reasonable conclude that the evidence sought to be seized was associated with the crime alleged and located in the place indicated.'" (*Id.* at 15 (quoting *Koerth*, 312 F.3d at 866–67 (7th Cir. 2002).) This was the proper standard and a correct analysis. And, as noted by Judge Joseph, the mere existence of an innocent explanation does not necessarily negate probable cause. (*Id.* at 12 (citing *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003).) The Court does not dismiss outright a circumstance that is susceptible of an innocent explanation. "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates,* 462 U.S. 213, 243 n.13 (1983). One incident viewed in isolation is often more "readily susceptible to innocent explanation" than one

viewed as part of a totality of circumstances. *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

In sum, probable cause exists when the inference of illegal conduct by trained and experienced officers is at least as probable as any innocent inference. *See Funches*, 327 F.3d at 587. The magistrate judge was entitled to draw reasonable inferences about where evidence is likely to be kept, and "need only conclude that it would be reasonable to seek evidence in the place indicated in the affidavit." *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008) (quoting *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995)). "Warrants may be issued even in the absence of 'direct evidence linking criminal objects to a particular site.'" *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (quoting *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985)). Cooper's affidavit detailed a number of reasons sufficient to establish probable cause that Marshall's Mill Road Condo was being used as a stash house. A reliable confidential source identified Marshall as the source of controlled substances as early as April 2019 and engaged in 11 controlled buys with alleged Marshall conspirators. Marshall supplied controlled substances to Vance and Hooper and was involved in money laundering. Marshall used his West Allis residence to receive and store narcotics. Marshall purchased the Mill Road Condo with over $40,000 in cash and took steps to keep the property hidden from law enforcement. During the month of August 2022, surveillance established Marshall's presence at the Mill Road Condo, and when taken in context provided a reasonable inference that it was being used for an illicit purpose. These factors provide a sufficient nexus between drug trafficking and Marshall's Mill Road Condo to support the issuance of the search warrant. *See Gates,* 462 U.S. at 243 n.13 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."); *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009) ("Probable cause is established when, based on the totality of the circumstances, [an] affidavit sets forth sufficient evidence to persuade a reasonably prudent person that a search will uncover evidence of a crime."). The Court concludes there was probable cause to search Marshall's Mill Road Condo.

The existence of probable cause here is further supported by the Seventh Circuit's decision in *United States v. Orozco*, 576 F.3d 745 (7th Cir. 2009). In *Orozco*, the "only support for a link between [the defendant's] home and the sought-after evidence of drug dealing and gang activity was [the] Agent['s] . . . belief—informed by his decade of experience as a narcotics investigator— that [the defendant], as second-in-command of the Aurora Latin Kings gang, would keep drug-

and gang-related evidence at his home." *Id.* at 749. The Seventh Circuit upheld the finding that probable cause existed, stating that "[t]he issuing magistrate judge was entitled to credit [the Agent's] lengthy experience and high degree of confidence that the sought-after evidence was very likely to be found in the [the defendant's] home." *Id.* at 750. In *Orozco*, the only nexus between the drug activity and Orozco's residence was the agent's opinion, based on his experience, that drug dealers kept drugs, money and drug ledgers in their homes. In this case, the magistrate judge reasonably relied on Cooper's attestation that the Mill Road Condo served as a suspected "stash house" given his significant experience and training that large scale drug traffickers secrete contraband, proceeds of drug sales, and records of drug transactions within their residences, businesses or "other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers." (ECF No. 154-1 at ¶¶4(h), 100.)

Marshall relies upon a Sixth Circuit decision, *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), to argue that Cooper's affidavit is insufficient. (ECF No. 154 at 12–14.) In *Frazier*, the Sixth Circuit found that an officer's affidavit failed to contain facts supporting the reliability of the confidential informants or provide independent corroboration of the information given by them. 432 F.3d at 532. The Sixth Circuit stated: "Where, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnesses illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Id.* at 533. The Court nonetheless upheld the search and seizure under the *Leon* good faith exception. The *Frazier* decision is not binding on this Court and is distinguishable from this case. Unlike the affidavit in *Frazier*, Cooper's affidavit justified the reliability of CS-1, as the information the source provided was corroborated through independent investigation and multiple controlled buys conducted by CS-1. (ECF No. 154 ¶11 n.2.)

Marshall fares no better with his argument that probable cause was lacking to search the cars associated with the Mill Road Condo. (ECF No. 154 at 14–15.) The magistrate judge did not discuss the search and seizure of any vehicle associated with the Mill Road Condo, as Marshall did not raise the argument in his original suppression motion, other than a passing reference in his conclusion asking to limit evidence from law enforcement's search of vehicles located at the Mill Road Condo "without the benefit [of] consent or search warrant." (ECF No. 142 at 12–13.) Law

enforcement, however, had a search warrant that included "all associated vehicles parked on the premises, the garage, and outbuilding at the [11946 West Mill Road, #25] address. (ECF No. 154-1 at 3.) The Court acknowledges that the affidavit does not describe any particular vehicle associated with the Mill Road Condo or the specific parking spot associated with Unit 25. The affidavit, however, does identify Marshall's vehicle as a white 2021 Cadillac Escalade, bearing Wisconsin license plate AND-5667, the vehicles of other co-conspirators, and in particular discusses Marshall driving his vehicle during each incident of the August 2022 surveillance. Under the totality of circumstances, the affidavit presented substantial evidence that Marshall was engaged in drug trafficking and the Mill Road Condo served as a likely location where possible drugs and drug-related documents or materials could be stored. Here, law enforcement had a warrant supported by probable cause to search Marshall's vehicle. The Court, giving "great deference" to the decision of the magistrate judge who issued the warrant, as the Court must do, concludes that the warrant, supported by the affidavit of Cooper, was sufficient to establish probable cause to search Marshall's Mill Road Condo and associated vehicles. See *Orozco*, 576 F.3d at 748.

II.     **Even if the Warrant Was Not Supported by Probable Cause, the Good Faith Exception to the Exclusionary Rule Applies.**

Even if the warrant was not supported by probable cause (and the Court holds the opposite), the evidence seized pursuant to the warrant would not be subject to suppression because the executing officer's reliance on the warrant was objectively reasonable and in good faith. *See United States v. Leon*, 468 U.S. 897, 905 (1984). "The decision to seek a warrant is prima facie evidence that the officer was acting in good faith." *United States v. Wiley*, 475 F.3d 908, 917 (7th Cir. 2007) (citing *Koerth*, 312 F.3d at 868). To rebut this presumption, the defendant must show that the issuing magistrate judge "wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Id.* (citing *Koerth*, 312 F.3d at 868). Further, "an officer cannot be expected to question the magistrate[ judge]'s probable-cause determination . . . ." *Leon*, 468 U.S. at 921. Marshall does not argue that the magistrate judge abandoned his neutral role or that he issued the warrant in reliance on a deliberately or recklessly false affidavit. Instead, Marshall argues that the affidavit is "bare-bones . . . lacking in [indicia] of probable cause," (ECF No. 154 at 16 (quotation omitted)), and does not challenge the government's argument that the agents reasonably relied upon the validly-issued search warrant and executed that warrant as it was written in good faith.

The Court rejects Marshall's argument, having found the affidavit contained sufficient probable cause to search the Mill Road Condo. Accordingly, even if probable cause was lacking, the good faith exception would apply, precluding suppression of the seized evidence.

## CONCLUSION

After a *de novo* review of Magistrate Judge Joseph's report and recommendation, (ECF No. 151), the Court overrules Marshall's objections and adopts Judge Joseph's report recommending that Marshall's motion to suppress be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Magistrate Judge Joseph's report, (ECF No. 151), recommending that Marshall's Motion to Suppress, (ECF No. 142), be denied is **ADOPTED**.

**IT IS FURTHER ORDERED** that Marshall's Motion to Suppress, (ECF No. 142), is **DENIED**.

Dated at Milwaukee, Wisconsin on January 29, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge